STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
EDDIE LEE GIBSON, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted November 5, 1973—Decided December 11, 1973.

Before Judges LEONARD, ALLCORN and CRAHAY.

*Mr. Stephen R. Champi*, Somerset County Prosecutor, attorney for appellant (*Mr. Leonard N. Arnold*, Assistant Prosecutor, of counsel and on the brief).

*Messrs. Rodriguez, Corodemus & Justin*, attorneys for respondent (*Mr. Michael R. Justin*, on the brief).

The opinion of the court was delivered by

CRAHAY, J. A. D. Defendant was convicted by a jury of possession of heroin in violation of *N. J. S. A.* 24:21–20, and thereupon moved for a new trial on the ground that the trial court erred in denying his request that the jury be instructed that if they found that the involved heroin was intended for defendant's own use, they could find him guilty as a disorderly person under *N. J. S. A.* 24:21–20(b). The motion was granted, the trial court concluding that he should have given the requested instruction, and further, that the case presented an opportunity for appellate reexamination of the principle enunciated in *State v. Reed*, 34 *N. J.* 554 (1961). On leave granted, the State appeals.

The essential facts are that defendant and another were present in an apartment dwelling which was raided by police executing a search warrant. According to the police, both men were attempting to flush tinfoil packets down a toilet. The police were successful in retrieving three of the packets later found to contain heroin.

Defendant admitted to being a heroin user and there was some evidence from which the jury might infer that he had recently used it. He denied possession of heroin for any purpose at the time of his apprehension. The jury resolved the issue of possession against him and he does not suggest meaningfully that the verdict was against the weight of the evidence.

*Reed, supra*, held that the Uniform Narcotic Drug Law (then *N. J. S. A.* 24:18–1 *et seq.*) proscribed the unauthorized possession of narcotics for any purpose, including the

possessor's imminent use. Notwithstanding that at that time *N. J. S. A.* 2A:170–8 made unauthorized use of narcotics a disorderly person offense, the Supreme Court in Reed reversed the ruling of the Appellate Division, 62 *N. J. Super.* 303 (1960), which had remanded the case to the trial court on the ground that the defendant was entitled to a jury instruction that if he possessed the narcotics solely for his own imminent consumption he was not guilty of the offense charged.

The reason for the legislative distinction between "possession" and "use" is patent and was succinctly stated by Justice Proctor in *Reed*:

> * * * When then was the unqualified term "possess" used? Undoubtedly, to facilitate enforcement. It is well known that it is extremely difficult to apprehend and convict drug traffickers. Illegal transfers do not take place under the eyes of the police. They are clandestine operations carefully guarded from official scrutiny. The proscription of possession, without more, facilitates the enforcement of the law against traffickers by eliminating the burden of proving a transfer. If possession is interpreted not to include possession for imminent personal use, the purpose of facilitating enforcement against traffickers would be seriously hindered * * *. [34 *N. J.* at 565]

This appeal asks simply whether the rule in *Reed* has been legislatively altered by the New Jersey Controlled Dangerous Substances Act, *N. J. S. A.* 24:21–1 *et seq.*, enacted in 1970. We are satisfied that it has not.

Under the new Act possession of controlled dangerous substances and possession thereof with intent to distribute are proclaimed to be misdemeanors. *N. J. S. A.* 24:21–19(a)(1) and 20(a). A person who uses or is under the influence of a controlled dangerous substance is deemed a disorderly person, *N. J. S. A.* 24:21–20(b). Significantly, the Legislature did not exempt from criminal liability as misdemeanants those persons who possessed the drugs for their own use. To accept defendant's argument, we would have to conclude that the Legislature was not aware of the dramatic difference between "possession" and "use," as enunciated in *Reed* and in its own prior enactments. No persuasive argument to that

end is addressed to us nor is there any warrant in law or reason for so holding.

It had been the rule in this State that the County Court lacked jurisdiction to try a defendant as a disorderly person. *State v. McGrath,* 17 *N. J.* 41 (1954). *McGrath* was effectively overruled in *State v. Saulnier,* 63 *N. J.* 199 (1973). *Saulnier* was decided on June 19, 1973, months after the trial of the instant matter, and was explicit in stating that "the overruling of *McGrath* is to be deemed prospective and to apply solely to future trials." At 208.

Even if the new approach, as allowed by *Saulnier,* to the treatment of "lesser included offenses" was applicable to this case, defendant on this record could not enjoy it. For there it was stated:

* * * There need not be a jury charge with respect to an included offense unless there is a rational basis in the evidence for a finding that the defendant was not guilty of the higher offense charged but guilty of the lesser included offense. [at 206]

Clearly here, there was no basis whatever for such a finding. The proof of possession was patently distinguishable from the proof of use.

Accordingly, there was no warrant for the trial court's granting the motion for a new trial. The order under review is reversed and the matter remanded to the trial court with directions to sentence defendant pursuant to *R.* 3:21–2 and 4.

Reversed.